**EXHIBIT "A"**

# ADJUSTABLE RATE NOTE
## (HOME EQUITY CONVERSION)

**COMMONWEALTH OF PENNSYLVANIA**

July 14, 2011

**PROPERTY ADDRESS**

**FHA Case Number:** ▮
**Loan Number:** ▮
**MIN Number:** ▮

3180 Barley Circle
DOVER, PA 17315
YORK COUNTY

Notice to Borrower: this document contains provisions for a variable interest rate.

## 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Lender" means MetLife Home Loans, a Division of MetLife Bank, N.A. and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender up to a maximum principal amount of Two Hundred Ten Thousand and 00/100 Dollars (U.S. $210,000.00), to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated July 14, 2011 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on June 20, 2094. Interest will be charged on unpaid principal at the rate of **One and 936/1000's percent (1.936%)** per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. At the end of each month, accrued interest shall be added to and made part of the principal balance as a Loan Advance and shall likewise thereafter bear interest.

The interest rate required by this Paragraph 2 and Paragraph 5 of this Note is the rate of interest Borrower will pay on the outstanding balance both before and after this Note becomes due and payable as described in Paragraph 7 of this Note, until repayment in full is made.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

### (B) Place

Payment shall be made at 334 Madison Avenue, Convent Station, NJ 07961 or any such other place as Lender may designate in writing by notice to Borrower.

### (C) Limitation of Liability

Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

## 5. INTEREST RATE CHANGES

### (A) Change Date

The interest rate may change on the first day of OCTOBER 1, 2011 and on ___ that day of each succeeding year, __X__ the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

### (B) The Index

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the One-Month London Interbank Offered Rate ("LIBOR") as made available in the "Money Rates" section of the Wall Street Journal rounded to three digits to the right of the decimal point. The Current Index means the most recent Index figure available 30 days before the Change Date, and if the day that is 30 days before the Change Date is not a Sunday or Monday and not the first business day of the week, the Current Index will be the Index available the first business day of that week that the Wall Street Journal is published. If the day that is 30 days before the Change Date is a Sunday or Monday and not the first business day of the week, the Current Index will be the Index available the first business day of the immediately prior week that the Wall Street Journal is published. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index .

### (C) Calculation of Interest Rate Changes

Before each Change Date, Lender will calculate a new interest rate by adding a margin of 1.750 percentage points to the

Case 1:22-bk-01438-HWV   Doc 83-2   Filed 08/13/25   Entered 08/13/25 15:39:52   Desc
Exhibit    Page 2 of 48

Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date

**(D) Limits on Interest Rate Changes**

___          **Annual**: The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

   X        **Monthly**: The interest rate will never increase above 11.936%.

**(E) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit. Any partial payments will be made available to Borrower by increasing the amount of Borrower's monthly payments and/or increasing the amount available to Borrower for Loan Advances under a line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple (b) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or retains a beneficial interest in a trust with such an interest in the Property).

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

Case 1:22-bk-01438-HWV    Doc 83-2    Filed 08/13/25    Entered 08/13/25 15:39:52    Desc
Exhibit    Page 3 of 48

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interest in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**8. WAIVERS**

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**9. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**10. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**11. RELATIONSHIP TO SECOND NOTE**

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments made by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

(ii) Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____
Phyllis J. Myers (Borrower)

Sept 2 - 2011
Date

Case 1:22-bk-01438-HWV   Doc 83-2   Filed 08/13/25   Entered 08/13/25 15:39:52   Desc
Exhibit    Page 4 of 48

# ALLONGE

**Loan Number:** ████████████

**BORROWER(S):** Phyllis J. Myers

**ADDRESS:** 3180 Barley Circle
DOVER, PA 17315

**AMOUNT:** $210,000.00

**Dated:** 07/14/11

---

Pay to the order of  **Champion Mortgage Company**

Without Recourse
MetLife Home Loans,
a Division of MetLife Bank, N.A.

by_____
Laura A. Wikstrom, Limited Vice President

# Allonge To Note

Loan Number:
Investor Number:
Celink Number:
Executed By:

        Myers, Phyllis J

Property Address:    3180 Barley Circle

                      DOVER, PA 17315

Pay To The Order Of:

_____

Without Recourse

        Champion Mortgage Company

By:        _____

        Michael J Lima

        Senior Vice President

**ALLONGE**

**SKEY:** ███████████

**LOAN:** ███████████

**BORROWERS: PHYLLIS J MYERS**

**PAY TO THE ORDER OF:**

_____

**WITHOUT RECOURSE**

**COMPANY NAME/ MORTGAGE ASSETS MANAGEMENT, LLC**

**BY:** _____

**NAME:** Hobart Russi

**TITLE:** Senior Director

**EXHIBIT "B"**

**YORK COUNTY RECORDER OF DEEDS**
**28 EAST MARKET STREET**
**YORK, PA 17401**

*Randi L. Reisinger - Recorder*
*Bradley G. Daugherty - Deputy*

Instrument Number - 2011034497
Recorded On 7/26/2011 At 1:11:46 PM
* Instrument Type - MORTGAGE
Invoice Number ▮▮▮▮▮▮
* Grantor - MYERS, PHYLLIS J
* Grantee - METLIFE HOME LOANS
User - WMM
* Customer - CORE SETTLEMENT SERVICES

Book - 2135  Starting Page - 2425
* Total Pages - 13

* **Received By:  MAIL**

**PARCEL IDENTIFICATION NUMBER**
▮▮▮▮▮▮▮▮▮▮
Total Parcels: 1

* **FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $23.50 |
| RECORDING FEES | $29.00 |
| AFFORDABLE HOUSING | $11.50 |
| PIN NUMBER FEES | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $79.50 |

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
## *PLEASE DO NOT DETACH*
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Book: **2135**  Page: **2437**



Prepared by and Return to:
MetLife Home Loans, a Division of MetLife Bank, N.A.
P.O. Box 8157
Edmond, OK 73083-8157

**Core Settlement Services**
**3800 Market Street**
**Camp Hill, PA 17011**

FHA Case Number: ███████████
Loan Number: ████████

Commonwealth of Pennsylvania

## OPEN-END MORTGAGE
## (HOME EQUITY CONVERSION)
### THIS MORTGAGE SECURES A REVERSE MORTGAGE LOAN

THIS MORTGAGE ("Security Instrument") is given on July 14, 2011. The mortgagor is Phyllis J Myers, a single woman, whose address is 3180 Barley Circle, DOVER, PA 17315 ("Borrower"). This Security Instrument is given to MetLife Home Loans, a Division of MetLife Bank, N.A., which is organized and existing under the laws of the United States of America, and whose address is 501 U.S. Highway 22 (1-W COPS), Bridgewater, NJ 08807 ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, including all future advances, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of **Two Hundred Thirteen Thousand and 00/100 Dollars (U.S.$213,000.00);** (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including all amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on June 20, 2094. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in YORK County, Pennsylvania, which has the address of:

3180 Barley Circle, DOVER, PA 17315, and is described more fully on Exhibit A attached to and hereby incorporated into this Mortgage ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

*Pennsylvania 1st Security Instrument*
*Page 1*

© *Bay Docs, Inc. 06/10*

Book 2135 Page 2425

MORTGAGE DEED OF TRUST, RECORDED

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited

*Pennsylvania 1ᵗ Security Instrument*
*Page 1*

© *Bay Docs, Inc. 06/10*

to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under the Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**
    (a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:
        (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

        (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or retains a beneficial interest in a trust with such an interest in the Property).

**(b) Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval by an authorized representative of the Secretary, if:

    (i)  The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

    (ii)  For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

    (iii) An obligation of the Borrower under this Security Instrument is not performed.

**(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in Paragraph 9(a)(ii) and (b) occur.

**(d) Notice to Secretary and Borrower** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9(a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

    (i)  Correct the matter which resulted in the Security Instrument coming due and payable; or

    (ii)  Pay the balance in full; or

    (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

    (iv) Provide the Lender with a deed in lieu of foreclosure.

**(e) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**(f) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and

reasonable and customary attorneys' fees and expenses properly associated with a foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:(i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. First Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the priority of the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

**13. Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, unless otherwise provided by the Secretary, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

    (i)  This Security Instrument is assigned to the Secretary; or

    (ii)  The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of, or preclude the exercise of, any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents

© *Bay Docs, Inc. 06/10*

due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure.  If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement.  The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.**  Under the Note, the initial stated interest rate of One and 936/1000's percent (1.936%) which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below.  When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the One-Month London Interbank Offered Rate ("LIBOR") as made available in the "Money Rates" section of the Wall Street Journal ("Index") plus a margin.. If the Index is no longer available, Lender will be required to use any index prescribed by the Department of Housing and Urban Development.  The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

Lender will perform the calculations described below to determine the new adjusted interest rate.  The interest rate may change on the first day of OCTOBER 1, 2011, and on __ that day of each succeeding year, X_ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index").  Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index, subject to the rate limitations below, will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

|  | Annually Adjusting Variable Rate Feature - The Calculated Interest Rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the Initial Interest Rate stated in Paragraph 2 of the Note. |
|---|---|
| X | Monthly Adjusting Variable Rate Feature - The Calculated Interest Rate will never increase above 11.936%. |

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by applicable law.

**24. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Paragraph 11 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**28. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges shall be obligatory.

**29. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check all riders that are applicable.]

| X | Condominium Rider | | PUD Rider |
|---|---|---|---|
| | Shared Appreciation Rider | | Other |

© *Bay Docs, Inc. 06/10*

This is a contract under seal and may be enforced under 42 Pa.C.S. Section 5529(b). BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses: _Karen L. Burk_

_Phyllis J. Myers_
**PHYLLIS J. MYERS (BORROWER)**

<u>Notary Acknowledgement</u>

**Commonwealth of Pennsylvania**

County of _York_

On this, the _14_ day of _July_ , 20 _11_ , before me, _KAREN L. BURCH_ , the undersigned officer, personally appeared Phyllis J. Myers, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Karen L. Burk_
Notary Public

[SEAL]

My commission expires: _11-24-13_

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Karen L. Burch, Notary Public
Hampden Twp., Cumberland County
My Commission Expires Nov. 24, 2013
Member, Pennsylvania Association of Notaries

## CERTIFICATE OF RESIDENCE OF MORTGAGEE

I,we certify that the address of the within-named mortgagee(s) is:

501 U.S. Highway 22 (1-W COPS) , Bridgewater, NJ 08807

_Karen L. Burk_
Mortgagee or Authorized representative of mortgagee(s)
Print Name: _KAREN L. BURCH_
Title (if not Mortgagee): _CLOSING AGENT_

Mortgagee
Print Name: _____

*Pennsylvania 1st Security Instrument*
*Page 8*

*© Bay Docs, Inc. 06/10*

# EXHIBIT A

Exhibit A to the Mortgage given on July 14, 2011, by Phyllis J Myers, a single woman ("Borrower") to MetLife Home Loans, a Division of MetLife Bank, N.A. ("Lender"). The Property is located in the county of YORK, state of PA, and is described as follows:

## Description of Property

See Attached Schedule A

© *Bay Docs, Inc. 06/10*

# CONDOMINIUM RIDER

FHA Case Number: ████████████

Loan Number: ████████

THIS CONDOMINIUM RIDER is made on July 14, 2011, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to MetLife Home Loans, a Division of MetLife Bank, N.A., ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 3180 Barley Circle, DOVER, PA 17315

The Property Address includes a unit, together with an undivided interest in the common elements of, a condominium project known as: Wheatland (the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owner's Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:**

A. So long as the Owner's Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender and the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance on the Property is deemed satisfied to the extent that the required coverage is provided by the Owner's Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project

C. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_Phyllis J. Myers_

PHYLLIS J. MYERS (BORROWER)

Stewart Title Guaranty Company

Commitment Number: 

**EXHIBIT A**
**PROPERTY DESCRIPTION**

The land referred to in this Commitment is described as follows:

ALL that certain Unit in the property known, named and identified as Wheatland Condominium, situate in Dover Township, York County, Pennsylvania, being designated as Unit No. 53, which has heretofore been submitted to the Provisions of the Uniform Condominium Act, 68 P.S. 3101 et. seq. by the recording in the Department of Records of York County, Pennsylvania, a certain Declaration including Plats and Plans attached thereto marked as Exhibits dated and recorded in Land Record Book 1640, page 5452, Plan Book GG, page 2274, First Amendment to Declaration of Condominium thereto dated July 8, 2004, recorded July 12, 2004, in York County, Pennsylvania, Land Record Book 1664, page 5049, and Plan Book GG, page 2300. Second Amendment to Declaration of Condominium dated December 22, 2004, recorded December 23, 2004, in York County, Pennsylvania, in Land Record Book 1695, page 7201, and Plan Book GG, page 2363. Third Amendment to Declaration of Condominium dated March 23, 2005, recorded March 30, 2005, in York County, Pennsylvania, in Land Record Book 1714, page 1087, and Plan book GG, page 2403. Fourth Amendment to Declaration of Condominium dated June 13, 2005, recorded June 24, 2005 in York County, Pennsylvania, in Land Record Book 1734, page 5215, and Plan Book GG, page 2444.

UNDER and subject, nevertheless, to certain Transfer of Special Declarant Rights, conditions, restrictions, and rights-of-way as shown in prior documents of record.

Parcel 

ALTA Commitment
Exhibit A

# EXHIBIT "C"



**YORK COUNTY RECORDER OF DEEDS**
**28 EAST MARKET STREET**
**YORK, PA 17401**

*Randi L. Reisinger - Recorder*
*Bradley G. Daugherty - Deputy*

Instrument Number -▓
Recorded On 11/20/2012 At 1:03:44 PM
* Instrument Type - ASSIGNMENT OF MORTGAGE
Invoice Number-▓
* Grantor - MYERS, PHYLLIS J
* Grantee - CHAMPION MORTGAGE COMPANY
User - DMH
* Customer - SIMPLIFILE LC E-RECORDING

Book - 2202   Starting Page - 6782
* Total Pages - 3

* Received By:

**FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $23.50 |
| RECORDING FEES | $14.00 |
| PIN NUMBER FEES | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $53.00 |

PARCEL IDENTIFICATION NUMBER

▓

Total Parcels: 1

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
## PLEASE DO NOT DETACH
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Book: **2202** Page: **6784**

CERTIFIED PROPERTY IDENTIFICATION NUMBERS
DOVER TP
YCGIS REGISTRY 11/20/2012 BY KD

Prepared By / Return To:
E.Lance/NTC, 2100 Alt. 19 North,
Palm Harbar, FL 34683
(800)346-9152

Loan Number ▮▮▮▮▮▮

Tax Code/PIN/UPI #: ▮▮▮▮▮▮

# ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, METLIFE HOME LOANS, A DIVISION OF METLIFE BANK, N.A., WHOSE ADDRESS IS 1555 W. Walnut Hill Lane, Irving, TX, 75038, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to CHAMPION MORTGAGE COMPANY, WHOSE ADDRESS IS 350 HIGHLAND DR., LEWISVILLE, TX 75067 (855)683-3095, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)..

Said Mortgage is dated 07/14/2011, in the amount of $213,000.00, made by PHYLLIS J. MYERS to METLIFE HOME LOANS, A DIVISION OF METLIFE BANK, N.A., recorded on 07/26/2011, in the Office of the Recorder of Deeds of YORK County, Pennsylvania, in Book 2135, Page 2425, and/or Document # . .
Property is commonly known as: 3180 BARLEY CIRCLE TWP. OF DOVER, DOVER, PA 17315.
Dated on _ **NOV/ 0 6 2012** _ (MM/DD/YYYY)
METLIFE HOME LOANS, A DIVISION OF METLIFE BANK, N.A.

By: _____
Berlinda Smith Dorsey
Limited Vice President

PAGE 1

Loan Number ███████

STATE OF TEXAS    COUNTY OF DALLAS
This instrument was acknowledged before me, **NOV 0 6 2012** (MM/DD/YYYY) by
_Berlinda Smith Dorsey_ as **Limited Vice President** of METLIFE
HOME LOANS, A DIVISION OF METLIFE BANK, N.A., on behalf of said entity.

_Brenda Jenkins_
Notary Public, State of TEXAS
Commission expires:

> BRENDA JENKINS
> Notary Public, State of Texas
> My Commission Expires
> September 30, 2015

Assignment of Mortgage from:
METLIFE HOME LOANS, A DIVISION OF METLIFE BANK, N.A., WHOSE ADDRESS IS 1555 W.
Walnut Hill Lane, Irving, TX, 75038, (ASSIGNOR),
to:
CHAMPION MORTGAGE COMPANY, WHOSE ADDRESS IS 350 HIGHLAND DR., LEWISVILLE, TX
75067 (855)683-3095, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Mortgagor: PHYLLIS J. MYERS

When Recorded Return To:
MetLife Home Loans
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

All that certain lot or piece of ground situated in
Mortgage Premise: 3180 BARLEY CIRCLE TWP. OF DOVER
DOVER, PA 17315
YORK
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said mortgage.

I, _Berlinda Smith Dorsey_, hereby certify that the below information and address for the
assignee are correct:
CHAMPION MORTGAGE COMPANY, WHOSE ADDRESS IS 350 HIGHLAND DR., LEWISVILLE, TX
75067 (855)683-3095, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

By: _Berlinda Smith Dorsey_      **Limited Vice President**

PAGE 2



*YORK COUNTY RECORDER OF DEEDS*
*28 EAST MARKET STREET*
*YORK, PA 17401*

*Laura Shue - Recorder*
*Tina M. Channell - Deputy*

Instrument Number - 2022011106      Book - 2713   Starting Page - 5561
Recorded On 2/25/2022 At 1:25:38 PM      ^ Total Pages - 4
* **Instrument Type** - ASSIGNMENT OF MORTGAGE
Invoice Number -
* **Grantor** - NATIONSTAR MORTGAGE LLC
* **Grantee** - MORTGAGE ASSESTS MANAGEMENT LLC
User - JLC      * **Received By: ERECORD**
* **Customer** - NATIONWIDE TITLE CLEARING, LLC

* **FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| RECORDING FEES | $13.00 |
| PIN NUMBER FEES | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $68.75 |

| **York County UPI Certification** |
|---|
| **On February 25, 2022 By JV** |

**PARCEL IDENTIFICATION NUMBER**

▮▮▮▮▮▮▮

**Total Parcels: 1**

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
# *PLEASE DO NOT DETACH*
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Book: **2713** Page: **5564**

**Prepared By:**
**Dave LaRose/NTC, 2100 Alt. 19**
**North, Palm Harbor, FL 34683**
**(800)346-9152**

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, WHOSE ADDRESS IS C/O NATIONSTAR MORTGAGE LLC, 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **MORTGAGE ASSETS MANAGEMENT, LLC, WHOSE ADDRESS IS, 12345 N LAMAR BLVD STE 125, AUSTIN, TX 78753, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 07/14/2011, in the amount of $213,000.00 made by **PHYLLIS J MYERS** to **METLIFE HOME LOANS, A DIVISION OF METLIFE BANK, N.A.** recorded on 07/26/2011, in the Office of the Recorder of Deeds of **YORK** County, in the State of **Pennsylvania**, in **Book 2135 and Page 2425**.

Property is more commonly known as: 3180 BARLEY CIRCLE DOVER TOWNSHIP, DOVER, PA 17315.

See Exhibit attached for Assignments, Modifications etc.

**Dated this 25th day of February in the year 2022**
**NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY**

By: *Cecelia Mansfield*

CECELIA MANSFIELD
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 25th day of February in the year 2022, by Cecelia Mansfield as VICE PRESIDENT of NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____

**TANNER DICKSON**

**COMM EXPIRES: 10/01/2024**

TANNER DICKSON
Notary Public - State of Florida
Commission # HH 049515
My Comm. Expires Oct 1, 2024
Bonded through National Notary Assn.

Assignment of Mortgage from:
**NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, WHOSE ADDRESS IS C/O NATIONSTAR MORTGAGE LLC, 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR),**
to:
**MORTGAGE ASSETS MANAGEMENT, LLC, WHOSE ADDRESS IS, 12345 N LAMAR BLVD STE 125, AUSTIN, TX 78753, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **PHYLLIS J MYERS**

All that certain lot or piece of ground situated in
Mortgage Premises: 3180 BARLEY CIRCLE DOVER TOWNSHIP
                              DOVER, PA 17315
                              YORK
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

### Certificate of Residence

I, **Cecelia Mansfield**, do certify that the precise address of the within named Assignee is:
**MORTGAGE ASSETS MANAGEMENT, LLC, WHOSE ADDRESS IS, 12345 N LAMAR BLVD STE 125, AUSTIN, TX 78753, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

_____

**CECELIA MANSFIELD**

**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

"EXHIBIT"

Assignment: METLIFE HOME LOANS, A DIVISION OF METLIFE BANK, N.A. TO CHAMPION MORTGAGE COMPANY DATED 11-06-2012. REC: 11-20-2012 BK 2202 PG 6782

**EXHIBIT "D"**

## LOCAL BANKRUPTCY FORM 3015-1

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

**Myers, Phyllis Jean**

CHAPTER 13

CASE NO. 22-01438-HWV

_____ ORIGINAL PLAN

__Sixth__ AMENDED PLAN (Indicate 1st, 2nd, 3rd, etc.)

__0__ Number of Motions to Avoid Liens
__0__ Number of Motions to Value Collateral

### CHAPTER 13 PLAN

#### NOTICES

Debtors must check one box on each line to state whether or not the plan includes each of the following items. If an item is checked as "Not Included" or if both boxes are checked or if neither box is checked, the provision will be ineffective if set out later in the plan.

| | | | |
|---|---|---|---|
| 1 | The plan contains nonstandard provisions, set out in § 9, which are not included in the standard plan as approved by the U.S. Bankruptcy Court for the Middle District of Pennsylvania. | ☐ Included | ☑ Not Included |
| 2 | The plan contains a limit on the amount of a secured claim, set out in § 2.E, which may result in a partial payment or no payment at all to the secured creditor. | ☐ Included | ☑ Not Included |
| 3 | The plan avoids a judicial lien or nonpossessory, nonpurchasemoney security interest, set out in § 2.G. | ☐ Included | ☑ Not Included |

#### YOUR RIGHTS WILL BE AFFECTED

READ THIS PLAN CAREFULLY. If you oppose any provision of this plan, you must file a timely written objection. This plan may be confirmed and become binding on you without further notice or hearing unless a written objection is filed before the deadline stated on the Notice issued in connection with the filing of the plan.

### 1. PLAN FUNDING AND LENGTH OF PLAN.

    **A. Plan Payments From Future Income**

        1. To date, the Debtor paid $ _____0.00_____ (enter $0 if no payments have been made to the Trustee to date). Debtor shall pay to the Trustee for the remaining term of the plan the following payments. If applicable, in addition to monthly plan payments, Debtor shall make conduit payments through the Trustee as set forth below. The total base plan is $ ___44,675.00___ , plus other payments and property stated in § 1B below:

| Start mm/yyyy | End mm/yyyy | Plan Payment | Estimated Conduit Payment | Total Monthly Payment | Total Payment Over Plan Tier |
|---|---|---|---|---|---|
| 09/2022 | 09/2024 | $576.00 | $0.00 | $576.00 | $14,400.00 |
| 10/2024 | 08/2027 | $865.00 | $0.00 | $865.00 | $30,275.00 |
| | | | | Total Payments: | $44,675.00 |

2. If the plan provides for conduit mortgage payments, and the mortgagee notifies the Trustee that a different payment is due, the Trustee shall notify the Debtor and any attorney for the Debtor, in writing, to adjust the conduit payments and the plan funding. Debtor must pay all post-petition mortgage payments that come due before the initiation of conduit mortgage payments.

3. Debtor shall ensure that any wage attachments are adjusted when necessary to conform to the terms of the plan.

4. CHECK ONE: ( ✔ ) Debtor is at or under median income. *If this line is checked, the rest of § 1.A.4 need not be completed or reproduced.*

( ) Debtor is over median income. Debtor estimates that a minimum of $ _____ must be paid to allowed unsecured creditors in order to comply with the Means Test.

B. **Additional Plan Funding From Liquidation of Assets/Other**

1. The Debtor estimates that the liquidation value of this estate is $ ___25,668.12___ . (Liquidation value is calculated as the value of all nonexempt assets after the deduction of valid liens and encumbrances and before the deduction of Trustee fees and priority claims.)

*Check one of the following two lines.*

✔ No assets will be liquidated. *If this line is checked, skip § 1.B.2 and complete § 1.B.3 if applicable.*

_____ Certain assets will be liquidated as follows:

2. In addition to the above specified plan payments, Debtor shall dedicate to the plan proceeds in the estimated amount of $ _____ from the sale of property known and designated as _____ All sales shall be completed by _____ , 20 _____ . If the property does not sell by the date specified, then the disposition of the property shall be as follows: _____

3. Other payments from any source(s) (describe specifically) shall be paid to the Trustee as follows: _____

2. **SECURED CLAIMS.**

**A.** **Pre-Confirmation Distributions.** *Check one.*

☑ None. *If "None" is checked, the rest of § 2.A need not be completed or reproduced.*

**B.** **Mortgages (Including Claims Secured by Debtor's Principal Residence) and Other Direct Payments by Debtor.** *Check one.*

☐ None. *If "None" is checked, the rest of § 2.B need not be completed or reproduced.*

☑ Payments will be made by the Debtor directly to the creditor according to the original contract terms, and without modification of those terms unless otherwise agreed to by the contracting parties. All liens survive the plan if not avoided or paid in full under the plan.

| Name of Creditor | Description of Collateral | Last Four Digits of Account Number |
|---|---|---|
| Mortgage Assets Management, LLC | 3180 Barley Cir Dover, PA 17315-3686 | |

**C.** **Arrears (Including, but not limited to, claims secured by Debtor's principal residence).** *Check one.*

☐ None. *If "None" is checked, the rest of § 2.C need not be completed or reproduced.*

☑ The Trustee shall distribute to each creditor set forth below the amount of arrearages in the allowed claim. If post-petition arrears are not itemized in an allowed claim, they shall be paid in the amount stated below. Unless otherwise ordered, if relief from the automatic stay is granted as to any collateral listed in this section, all payments to the creditor as to that collateral shall cease, and the claim will no longer be provided for under § 1322(b)(5) of the Bankruptcy Code:

| Name of Creditor | Description of Collateral | Estimated Pre-petition Arrears to be Cured | Estimated Postpetition Arrears to be Cured | Estimated Total to be paid in plan |
|---|---|---|---|---|
| Mortgage Assets Management, LLC | 3180 Barley Cir Dover, PA 17315-3686 | $16,760.27 | | $16,760.27 |

**D.** **Other secured claims (conduit payments and claims for which a § 506 valuation is not applicable, etc.)**

☐ None. *If "None" is checked, the rest of § 2.D need not be completed or reproduced.*

☑ The claims below are secured claims for which a § 506 valuation is not applicable, and can include: (1) claims that were either (a) incurred within 910 days of the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of the Debtor, or (b) incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value; (2) conduit payments; or (3) secured claims not provided for elsewhere.

3

1. The allowed secured claims listed below shall be paid in full and their liens retained until the earlier of the payment of the underlying debt determined under nonbankruptcy law or discharge under §1328 of the Code.

2. In addition to payment of the allowed secured claim, present value interest pursuant to 11 U.S.C. §1325(a)(5)(B)(ii) will be paid at the rate and in the amount listed below, unless an objection is raised. If an objection is raised, then the court will determine the present value interest rate and amount at the confirmation hearing.

3. Unless otherwise ordered, if the claimant notifies the Trustee that the claim was paid, payments on the claim shall cease.

| Name of Creditor | Description of Collateral | Principal Balance of Claim | Interest Rate | Total to be Paid in Plan |
|---|---|---|---|---|
| SANTANDER CONSUMER USA | 2016 Chevrolet Trax<br>VIN: KL7CJPSB0G8696100 | $9,068.20 | 7.00% | $10,902.44 |
| York County Tax Claim Bureau | 3180 Barley Cir Dover, PA 17315-3686 | $4,467.77 | 9.00% | $5,670.47 |

**E.** **Secured claims for which a § 506 valuation is applicable.** *Check one.*

☑ None. *If "None" is checked, the rest of § 2.E need not be completed or reproduced.*

**F.** **Surrender of Collateral.** *Check one.*

☑ None. *If "None" is checked, the rest of § 2.F need not be completed or reproduced.*

**G.** **Lien Avoidance.** *Do not use for mortgages or for statutory liens, such as tax liens. Check one.*

☑ None. *If "None" is checked, the rest of § 2.G need not be completed or reproduced.*

## 3. PRIORITY CLAIMS.

**A.** **Administrative Claims**

1. Trustee's Fees. Percentage fees payable to the Trustee will be paid at the rate fixed by the United States Trustee.

2. Attorney's fees. Complete only one of the following options:

   a. In addition to the retainer of $ _____179.00_____ already paid by the Debtor, the amount of $ ____4,321.00____ in the plan. This represents the unpaid balance of the presumptively reasonable fee specified in L.B.R. 2016-2(c); or

Case 1:22-bk-01438-HWV   Doc 83-2   Filed 08/13/25   Entered 08/13/25 15:39:52   Desc
Exhibit    Page 34 of 48

b. $ _____ per hour, with the hourly rate to be adjusted in accordance with the terms of the written fee agreement between the Debtor and the attorney. Payment of such lodestar compensation shall require a separate fee application with the compensation approved by the Court pursuant to L.B.R. 2016-2(b).

3. <u>Other.</u> Other administrative claims not included in §§ 3.A.1 or 3.A.2 above. *Check one of the following two lines.*

☑ None. *If "None" is checked, the rest of § 3.A.3 need not be completed or reproduced.*

**B. <u>Priority Claims (including, certain Domestic Support Obligations</u>**

Allowed unsecured claims entitled to priority under § 1322(a) will be paid in full unless modified under §9.

| Name of Creditor | Estimated Total Payment |
|---|---|
| | |

**C. <u>Domestic Support Obligations assigned to or owed to a governmental unit under 11 U.S.C. §507(a)(1)(B).</u>** *Check one of the following two lines.*

☑ None. *If "None" is checked, the rest of § 3.C need not be completed or reproduced.*

**4. UNSECURED CLAIMS**

**A. <u>Claims of Unsecured Nonpriority Creditors Specially Classified.</u>** *Check one of the following two lines.*

☑ None. *If "None" is checked, the rest of § 4.A need not be completed or reproduced.*

**B. Remaining allowed unsecured claims will receive a pro-rata distribution of funds remaining after payment of other classes.**

**5. EXECUTORY CONTRACTS AND UNEXPIRED LEASES. *Check one of the following two lines.***

☑ None. *If "None" is checked, the rest of § 5 need not be completed or reproduced.*

**6. VESTING OF PROPERTY OF THE ESTATE.**

**Property of the estate will vest in the Debtor upon**

*Check the applicable line:*

☐ plan confirmation.

☐ entry of discharge.

☑ closing of case.

**7. DISCHARGE: (Check one)**

☑ The debtor will seek a discharge pursuant to § 1328(a).

☐ The debtor is not eligible for a discharge because the debtor has previously received a discharge described in § 1328(f).

## 8. ORDER OF DISTRIBUTION:

If a pre-petition creditor files a secured, priority or specially classified claim after the bar date, the Trustee will treat the claim as allowed, subject to objection by the Debtor.

Payments from the plan will be made by the Trustee in the following order:

Level 1: _____
Level 2: _____
Level 3: _____
Level 4: _____
Level 5: _____
Level 6: _____
Level 7: _____
Level 8: _____

*If the above Levels are filled in, the rest of § 8 need not be completed or reproduced.* If the above Levels are not filled-in, then the order of distribution of plan payments will be determined by the Trustee using the following as a guide:

Level 1:  Adequate protection payments.
Level 2:  Debtor's attorney's fees.
Level 3:  Domestic Support Obligations.
Level 4:  Priority claims, pro rata.
Level 5:  Secured claims, pro rata.
Level 6:  Specially classified unsecured claims.
Level 7:  Timely filed general unsecured claims.
Level 8:  Untimely filed general unsecured claims to which the Debtor has not objected.

## 9. NONSTANDARD PLAN PROVISIONS

**Include the additional provisions below or on an attachment. Any nonstandard provision placed elsewhere in the plan is void. (NOTE: The plan and any attachment must be filed as one document, not as a plan and exhibit.)**

Dated: ___09/23/2024___          ___/s/ Michael A. Cibik___
                                 Attorney for Debtor


                                 _____
                                 Debtor


                                 _____
                                 Joint Debtor

By filing this document, the debtor, if not represented by an attorney, or the Attorney for Debtor also certifies that this plan contains no nonstandard provisions other than those set out in § 9.

6

**EXHIBIT "E"**

# THE COUNTY OF YORK

RECEIVED
## WEST PALM BEACH-
WL

**RACHAEL P. WHITE**
DIRECTOR OF
ASSESSMENT AND TAX CLAIM



PETER T RUTH
SOLICITOR

## TAX CLAIM BUREAU

December 27, 2024

PHH Mortgage Services
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

RE:                    590 Company St

To Whom It May Concern:

We have received your check              for $8,417.00 on the above referenced property. We cannot accept payment the following reason.

( )    Insufficient information to credit your account. We need the **parcel identification number**.

(x)    The check cannot be processed by our financial institution due to the bank account number is unreadable. In addition, a payment was applied to the delinquent taxes from the Bankruptcy Court. As of December 27, 2024, the amount due is $2,767.13.

( ) You sent a **Personal** check/**Business** check. County policy prohibits us from accepting personal/ business checks. Please remit payment in the form of cashier check, certified funds, or money order. Please call for correct amount.

We accept only certified funds as method of payment. Certified check, money order or cashier's checks are all acceptable. **Please do not send personal checks.** Please send all mail to York County Tax Claim Bureau, 28 E. Market Street, Room 110, York PA 17401. Payments may also be made in person at our office from 8:00 am to 4:30 pm Monday through Friday.

You may also make payments online by going to www.yorkcountypa.gov. (There is a 2.5% processing fee charged by PAYGOV.US and it will take at least five (5) days to credit your account. Please plan accordingly to avoid additional fees.)

Sincerely,

*Sharon M Sauble*

Sharon M. Sauble
Tax Claim Manager
Encl. Check

REVIEWED
By Bocanegra, Miguel A at 11:23 am, Jan 10, 2025

**COUNTY OF YORK**

**28 E MARKET STREET YORK, PA 17**

**717-771-9205**

**REAL ESTATE TAX CERTIFICATION**

RECEIVED

WEST PALM BEACH-

WL

Date: 11/20/2024                     Fee:  $  15.00              Cert. No:  43642

REVIEWED

MYERS PHYLLIS J                      District:    DOVER TOWNSHIP
3180 BARLEY CIR                      Deed:        2068      - 0065
DOVER PA 17315                       Location:    3180 BARLEY CIR
                                     Parcel Id:

Assessment:     128,190

Balances as of 11/20/2024

| YEAR | TAX TYPE | TAX AMOUNT | PENALTY | INTEREST | OTHERS | PAID | BALANCE |
|------|----------|-----------|---------|----------|--------|------|---------|
| | Tax Claim Balances valid through | November/2024 | | | | | |
| 2022 | COSTS | 0.00 | 0.00 | 0.00 | 30.00 | 0.00 | 30.00 |
| 2022 | SCHOOL | 2,865.82 | 286.58 | 520.08 | 0.00 | 0.00 | 3,672.48 |
| 2023 | COSTS | 0.00 | 0.00 | 0.00 | 30.00 | 0.00 | 30.00 |
| 2023 | SCHOOL | 2,863.10 | 286.31 | 236.20 | 0.00 | 0.00 | 3,385.61 |
| 2023 | TOWNSHIP | 166.65 | 16.67 | 13.70 | 0.00 | 0.00 | 197.02 |
| 2023 | YORK COUNTY | 884.51 | 88.45 | 73.00 | 0.00 | 0.00 | 1,045.96 |
| | TOTAL: | 6,780.08 | 678.01 | 842.98 | 60.00 | 0.00 | 8,361.07 |

By: _____11/27/24_____                          Per: __________

This tax certification is subject to the possibility that additional information may be in the exclusive control of the school district, other taxing authorities, or third party tax collectors.

$5670.47 paid
by Bankruptcy

2022 AND 2023 DOVER AREA SCHOOL DIST TAXES ARE DELQ AND 2023 DOVER TOWNSHIP AND YORK COUNTY TAXES ARE DELQ WITH TOTAL PAYOFF $8361.07 + INST $55.93.TOTAL PAYOFF VALID TILL 12-31-2024 $8417.00

APPROVED

RETAIN THIS
STATEMENT
FOR YOUR
RECORDS

Payee: **YORK COUNTY TAX CLAIMS**
28 EAST MARKET STREET
YORK, PA 17401-1501

**Check #:**

**Check Date: 01/13/2025**          **# of Disbursements:     1**          **Check Amount: $2,767.13**

| Loan Skey | Loan # | Property Address | Invoice Date | Invoice # | Amount |
|---|---|---|---|---|---|
| | | 3180 Barley Circle, Dover, PA 17315 | 1/10/2025 | | $2,767.13 |

DETACH AT PERFORATION BEFORE DEPOSITING CHECK

DETACH HERE

**PHH Mortgage Services**
1661 Worthington Road,  Suite 100
West Palm Beach, FL   33409

**TEXAS CAPITAL BANK**

**CHECK NO.**

PAY          TWO THOUSAND SEVEN HUNDRED  SIXTY-SEVEN AND 13/100 * * * * * * * * * * * * * * * * * * * * * * * * * * * *          **DOLLARS**

TEXAS CAPITAL BANK

| DATE | AMOUNT |
|---|---|
| **01/13/2025** | **\*\*2,767.13** |

*To the*
*Order*
*Of:*          **YORK COUNTY TAX CLAIMS**
28 EAST MARKET STREET
YORK, PA 17401-1501

**\*\*\*VOID AFTER 120 DAYS\*\*\***

*For:* _____          _____


**Report Description:** Displays all the transactions for the selected loan

Loan Skey:                                          **Propery Address:** 3180 Barley Circle, Dover, PA, 17315
**Borrowers Last Name:** MYERS                      **Investor Name:** Cascade Funding Mortgage Trust - HB10
**Loan Number:**                                    **FHA Case Number:**

| Transaction Date | Transaction Description | Principal Amount | Interest | MIP | Service Fee Amount | Corporate Advance Amount | Totals: |
|---|---|---|---|---|---|---|---|
| 7/15/2025 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7/10/2025 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7/2/2025 | Corp Adv - S310 - Bnk Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6/30/2025 | Monthly Int, MIP Accrual & SF | $0.00 | $848.01 | $171.35 | $0.00 | $0.00 | $1,019.36 |
| 6/25/2025 | Part Repay - Transferred Prop Charges | $0.00 | $0.00 | ($482.36) | $0.00 | $0.00 | ($482.36) |
| 6/23/2025 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6/11/2025 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/31/2025 | Monthly Int, MIP Accrual & SF | $0.00 | $845.46 | $170.79 | $0.00 | $0.00 | $1,016.25 |
| 5/28/2025 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/22/2025 | Part Repay - Transferred Prop Charges | $0.00 | $0.00 | ($484.51) | $0.00 | $0.00 | ($484.51) |
| 5/8/2025 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/30/2025 | Monthly Int, MIP Accrual & SF | $0.00 | $842.10 | $170.22 | $0.00 | $0.00 | $1,012.32 |
| 4/28/2025 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/22/2025 | Part Repay - Transferred Prop Charges | $0.00 | $0.00 | ($482.16) | $0.00 | $0.00 | ($482.16) |
| 3/31/2025 | Monthly Int, MIP Accrual & SF | $0.00 | $839.33 | $169.77 | $0.00 | $0.00 | $1,009.10 |
| 3/26/2025 | Part Repay - Transferred Prop Charges | $0.00 | $0.00 | ($482.16) | $0.00 | $0.00 | ($482.16) |
| 3/21/2025 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/13/2025 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/28/2025 | Monthly Int, MIP Accrual & SF | $0.00 | $842.49 | $169.29 | $0.00 | $0.00 | $1,011.78 |
| 2/27/2025 | Part Repay - Transferred Prop Charges | $0.00 | $0.00 | ($482.16) | $0.00 | $0.00 | ($482.16) |
| 2/21/2025 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/18/2025 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/31/2025 | Monthly Int, MIP Accrual & SF | $0.00 | $862.61 | $168.61 | $0.00 | $0.00 | $1,031.22 |
| 1/28/2025 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/28/2025 | Part Repay - Transferred Prop Charges | $0.00 | $0.00 | ($482.16) | $0.00 | $0.00 | ($482.16) |
| 1/23/2025 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/13/2025 | Corp Adv - S305 - Taxes | $0.00 | $0.00 | $0.00 | $0.00 | $2,767.13 | $2,767.13 |
| 1/8/2025 | Corp Adv - S305 - Taxes Void | $0.00 | $0.00 | $0.00 | $0.00 | ($8,417.00) | ($8,417.00) |
| 1/2/2025 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/31/2024 | Monthly Int, MIP Accrual & SF | $0.00 | $896.87 | $170.59 | $0.00 | $0.00 | $1,067.46 |
| 12/30/2024 | Part Repay - Transferred Prop Charges | $0.00 | $0.00 | ($3,392.88) | $0.00 | $0.00 | ($3,392.88) |
| 12/27/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/27/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/20/2024 | Corp Adv - S305 - Taxes | $0.00 | $0.00 | $0.00 | $0.00 | $8,417.00 | $8,417.00 |
| 12/13/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/11/2024 | Re-Class Disbursement (Source) | $0.00 | $0.00 | $0.00 | $0.00 | ($30.00) | ($30.00) |
| 12/11/2024 | Re-Class Disbursement (Destination) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/10/2024 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $30.00 | $30.00 |
| 11/30/2024 | Monthly Int, MIP Accrual & SF | $0.00 | $912.63 | $170.04 | $0.00 | $0.00 | $1,082.67 |
| 11/22/2024 | Corp Adv - S310 - Bnk Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $150.00 | $150.00 |
| 11/12/2024 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/12/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/31/2024 | Monthly Int, MIP Accrual & SF | $0.00 | $964.51 | $168.86 | $0.00 | $0.00 | $1,133.37 |
| 10/23/2024 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/15/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9/30/2024 | Monthly Int, MIP Accrual & SF | $0.00 | $967.29 | $167.68 | $0.00 | $0.00 | $1,134.97 |
| 9/13/2024 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9/10/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/31/2024 | Monthly Int, MIP Accrual & SF | $0.00 | $959.19 | $166.50 | $0.00 | $0.00 | $1,125.69 |
| 8/26/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/22/2024 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |


**Report Description:** Displays all the transactions for the selected loan

Loan Skey:                                    Propery Address: 3180 Barley Circle, Dover, PA, 17315
Borrowers Last Name: MYERS                    Investor Name: Cascade Funding Mortgage Trust - HB10
Loan Number:                                  FHA Case Number:

| Date | Description | | | | | | |
|------|-------------|--|--|--|--|--|--|
| 7/31/2024 | Monthly Int, MIP Accrual & SF | $0.00 | $950.90 | $165.34 | $0.00 | $0.00 | $1,116.24 |
| 7/30/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7/25/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7/25/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7/24/2024 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7/11/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6/30/2024 | Monthly Int, MIP Accrual & SF | $0.00 | $942.30 | $164.19 | $0.00 | $0.00 | $1,106.49 |
| 6/26/2024 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6/10/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/31/2024 | Monthly Int, MIP Accrual & SF | $0.00 | $937.03 | $163.04 | $0.00 | $0.00 | $1,100.07 |
| 5/30/2024 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/9/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/6/2024 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/30/2024 | Monthly Int, MIP Accrual & SF | $0.00 | $929.46 | $161.90 | $0.00 | $0.00 | $1,091.36 |
| 4/9/2024 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/1/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/31/2024 | Monthly Int, MIP Accrual & SF | $0.00 | $924.26 | $160.77 | $0.00 | $0.00 | $1,085.03 |
| 3/14/2024 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/11/2024 | Corp Adv - S310 - Bnk Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/29/2024 | Monthly Int, MIP Accrual & SF | $0.00 | $919.71 | $159.65 | $0.00 | $0.00 | $1,079.36 |
| 2/9/2024 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/9/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/1/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/1/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/31/2024 | Monthly Int, MIP Accrual & SF | $0.00 | $911.89 | $158.54 | $0.00 | $0.00 | $1,070.43 |
| 1/25/2024 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/16/2024 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/31/2023 | Monthly Int, MIP Accrual & SF | $0.00 | $902.27 | $157.43 | $0.00 | $0.00 | $1,059.70 |
| 12/22/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/30/2023 | Monthly Int, MIP Accrual & SF | $0.00 | $894.99 | $156.34 | $0.00 | $0.00 | $1,051.33 |
| 11/14/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/31/2023 | Monthly Int, MIP Accrual & SF | $0.00 | $889.63 | $155.25 | $0.00 | $0.00 | $1,044.88 |
| 10/19/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/13/2023 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9/30/2023 | Monthly Int, MIP Accrual & SF | $0.00 | $881.72 | $154.17 | $0.00 | $0.00 | $1,035.89 |
| 9/21/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9/15/2023 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9/6/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/31/2023 | Monthly Int, MIP Accrual & SF | $0.00 | $845.03 | $153.13 | $0.00 | $0.00 | $998.16 |
| 8/25/2023 | Re-Class Disbursement (Destination) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/25/2023 | Re-Class Disbursement (Source) | $0.00 | $0.00 | $0.00 | $0.00 | ($20.00) | ($20.00) |
| 8/16/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/3/2023 | Corp Adv - S310 - Bnk Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $150.00 | $150.00 |
| 7/31/2023 | Monthly Int, MIP Accrual & SF | $0.00 | $840.05 | $152.10 | $0.00 | $0.00 | $992.15 |
| 7/13/2023 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7/7/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6/30/2023 | Monthly Int, MIP Accrual & SF | $0.00 | $823.33 | $151.08 | $0.00 | $0.00 | $974.41 |
| 6/8/2023 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6/6/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/31/2023 | Monthly Int, MIP Accrual & SF | $0.00 | $790.25 | $150.10 | $0.00 | $0.00 | $940.35 |
| 5/31/2023 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

Case 1:22-bk-01438-HWV    Doc 83-2    Filed 08/13/25    Entered 08/13/25 15:39:52    Desc
Exhibit    Page 42 of 48


**Report Description:** Displays all the transactions for the selected loan

| Loan Skey: | Propery Address: 3180 Barley Circle, Dover, PA, 17315 |
|---|---|
| Borrowers Last Name: MYERS | Investor Name: Cascade Funding Mortgage Trust - HB10 |
| Loan Number: | FHA Case Number: |

| Date | Description | | | | | | Amount |
|---|---|---|---|---|---|---|---|
| 5/10/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/30/2023 | Monthly Int, MIP Accrual & SF | $0.00 | $761.87 | $149.15 | $0.00 | $0.00 | $911.02 |
| 4/24/2023 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/10/2023 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/7/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/31/2023 | Monthly Int, MIP Accrual & SF | $0.00 | $749.38 | $148.22 | $0.00 | $0.00 | $897.60 |
| 3/15/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/28/2023 | Monthly Int, MIP Accrual & SF | $0.00 | $723.23 | $147.31 | $0.00 | $0.00 | $870.54 |
| 2/24/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/24/2023 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/17/2023 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/31/2023 | Monthly Int, MIP Accrual & SF | $0.00 | $680.11 | $146.45 | $0.00 | $0.00 | $826.56 |
| 1/19/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/10/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/31/2022 | Monthly Int, MIP Accrual & SF | $0.00 | $642.86 | $145.63 | $0.00 | $0.00 | $788.49 |
| 12/22/2022 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/19/2022 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/14/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $20.00 | $20.00 |
| 12/13/2022 | Corp Adv - S306 - Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $100.00 | $100.00 |
| 12/6/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/30/2022 | Monthly Int, MIP Accrual & SF | $0.00 | $559.87 | $144.89 | $0.00 | $0.00 | $704.76 |
| 11/17/2022 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/31/2022 | Monthly Int, MIP Accrual & SF | $0.00 | $493.15 | $144.23 | $0.00 | $0.00 | $637.38 |
| 10/19/2022 | Corp Adv - S310 - Bnk Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/12/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/10/2022 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9/30/2022 | Monthly Int, MIP Accrual & SF | $0.00 | $472.35 | $143.59 | $0.00 | $0.00 | $615.94 |
| 9/28/2022 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $195.00 | $195.00 |
| 9/28/2022 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $1.95 | $1.95 |
| 9/15/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9/15/2022 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/31/2022 | Monthly Int, MIP Accrual & SF | $0.00 | $387.11 | $143.04 | $0.00 | $0.00 | $530.15 |
| 8/31/2022 | Corp Adv - S310 - Bnk Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $550.00 | $550.00 |
| 8/25/2022 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/24/2022 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/24/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $20.00 | $20.00 |
| 8/19/2022 | Corp Adv - S310 - Bnk Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/15/2022 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $44.10 | $44.10 |
| 8/15/2022 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $14.97 | $14.97 |
| 8/15/2022 | Corp Adv - S306 - Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $100.00 | $100.00 |
| 8/15/2022 | Corp Adv - S306 - Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $150.00 | $150.00 |
| 8/15/2022 | Corp Adv - S306 - Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $250.00 | $250.00 |
| 8/3/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $20.00 | $20.00 |
| 7/31/2022 | Monthly Int, MIP Accrual & SF | $0.00 | $320.69 | $142.55 | $0.00 | $0.00 | $463.24 |
| 7/14/2022 | Corp Adv - S409 - Appraisal Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7/1/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $20.00 | $20.00 |
| 6/30/2022 | Monthly Int, MIP Accrual & SF | $0.00 | $290.23 | $142.10 | $0.00 | $0.00 | $432.33 |
| 5/31/2022 | Monthly Int, MIP Accrual & SF | $0.00 | $248.82 | $141.70 | $0.00 | $0.00 | $390.52 |
| 5/26/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $20.00 | $20.00 |
| 5/3/2022 | Corp Adv - S307 - Title Examination Fees | $0.00 | $0.00 | $0.00 | $0.00 | $250.00 | $250.00 |
| 4/30/2022 | Monthly Int, MIP Accrual & SF | $0.00 | $223.96 | $141.32 | $0.00 | $0.00 | $365.28 |



PHH Mortgage Services

**Loan Balance History**

**Report Description:** Displays all the transactions for the selected loan

**Loan Skey:**
**Borrowers Last Name:** MYERS
**Loan Number:**

**Propery Address:** 3180 Barley Circle, Dover, PA, 17315
**Investor Name:** Cascade Funding Mortgage Trust - HB10
**FHA Case Number:**

| | | | | | | |
|---|---|---|---|---|---|---|
| 4/29/2022 Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0.00 | $20.00 | **$20.00** |
| 4/5/2022 Loan Setup - Advances (Principal) | $6,047.04 | $0.00 | $0.00 | $0.00 | $0.00 | **$6,047.04** |
| 4/5/2022 Loan Setup - Sch Payment (Principal) | $75,522.33 | $0.00 | $0.00 | $0.00 | $0.00 | **$75,522.33** |
| 4/5/2022 Loan Setup - Interest Balance | $0.00 | $24,925.23 | $0.00 | $0.00 | $0.00 | **$24,925.23** |
| 4/5/2022 Loan Setup - Monthly MIP Balance | $0.00 | $0.00 | $12,408.15 | $0.00 | $0.00 | **$12,408.15** |
| 4/5/2022 Loan Setup - Property Charges Balance | $16,760.27 | $0.00 | $0.00 | $0.00 | $0.00 | **$16,760.27** |
| **Totals:** | **$98,329.64** | **$54,642.17** | **$12,226.67** | **$0.00** | **$4,823.15** | **$170,021.63** |

# EXHIBIT "F"

| | |
|---|---|
| Borrower Last Name: | MYERS |
| Property Address | 3180 BARLEY CIRCLE, DOVER, PA 17315 |

| | |
|---|---|
| As of Date: | 07/15/2025 |
| Good through Date: | 07/15/2025 |

| | |
|---|---|
| Principal Advances: | $ 98,329.64 |
| Interest: | $ 54,642.17 |
| Interest Rate Type | Monthly (1-Mth SOFR) |
| Current Interest Rate | 6.19 |
| MIP: | $ 12,226.67 |
| MIP Rate | 1.25 |
| Servicing Fees: | $ 0.00 |
| Corporate Advances: | $ 4,823.15 |
| Intra Month Per Diem Total: | $ 505.30 |
| Total Amount Due: | $ 170,526.93 |
| Per Diem Post Good Through Date** | 34.78 |

*NOTE: this is a not an external payoff and should not be relied upon if the loan is to be paid in full

**per diem is as of the date generated. Any advances incurred between the as of date and the good through date will increase per diem and will not be included here.

# EXHIBIT "G"

**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Phyllis** | **Jean** | **Myers** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **MIDDLE DIST. OF PENNSYLVANIA**

Case number
(if known) _____

☐ Check if this is an
amended filing

Official Form 106A/B

## Schedule A/B: Property                                                        12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1.   Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

**1.1.**

| | | |
|---|---|---|
| **3180 Barley Circle** | **What is the property?** | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| Street address, if available, or other description | Check all that apply. | |

**What is the property?** Check all that apply.

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

| **Dover** | **PA** | **17315** |
|---|---|---|
| City | State | ZIP Code |

County _____

**3180 Barley Circle, Dover, PA Residence - Realtor.com value ($186,500) less 20% liquidation cost.**

**Current value of the entire property?**
$149,200.00

**Current value of the portion you own?**
$149,200.00

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee Simple**

**Who has an interest in the property?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Other information you wish to add about this item, such as local property identification number: _____

2.   Add the dollar value of the portion you own for all of your entries from Part 1, including any
     entries for pages you have attached for Part 1. Write that number here........................................➔  **$149,200.00**